So, um, Mr Eaton Thank you. Your honor. Good morning. Blake Eaton. Federal defenders on behalf of Mr Akbar, I'll try to reserve two minutes for rebuttal. This court held in Comito that when the government merely asserts its inability to subpoena an important witness, there is quote nothing at all to put on the government side of the scale. Because here, as in Comito, the government merely asserted its inability to subpoena Ms. Gallegos, Comito controls, and this court must reverse. I'm not going to spend much time talking about the importance of Ms. Gallegos as a witness in this case. I don't think there's any real dispute that she was essential to the revocation proceedings against Mr. Gallegos. So I'm going to focus on the government's good cause arguments. I'm starting with this question of the efforts made to subpoena Ms. Gallegos. Comito stands for a clear proposition that when a witness is this important, when there's one eyewitness in a case, the government has to make some effort to procure that witness for court and has to explain those efforts to the court. Otherwise, there's no real ability to engage in the Comito balancing. In Comito, the government, the prosecutor said that probation tried to subpoena the witness, they were unsuccessful, but the probation officer did not testify about those efforts. The prosecutor did not in the proffer explain what efforts were made. That's the same problem that we have here. We have the assistant United States attorney saying that a state detective had tried and failed to subpoena Ms. Gallegos, but when asked about what those efforts were on page 16 of the record, the prosecutor clarified, I don't remember, I don't know how many times or how they tried to subpoena this witness. Do we have any case law that does sort of a thorough analysis of the indicia of reliability of the hearsay and stops there and just doesn't worry about the government's efforts to bring the witness? No, Your Honor. In every case, and certainly every published case, the government looks to both reliability and the efforts. It's often called good cause, but the efforts that are actually made. So even in Hall, the court goes through an extensive list of indicia of reliability, corroborating witnesses, physical evidence, corroborating the statement, and then still says, it says, quote, and defendants otherwise strong interest in confrontation is somewhat lessened by the reliability of the hearsay evidence, but it is not defeated. And then it moves on to actual testimony that was given by a probation officer in that case to explain how the government showed it's good cause. How much time elapsed between the state's failed efforts to serve a subpoena honor and the federal hearing? The AUSA on the case indicated that he spoke with the detective once about these efforts to subpoena, and this all happened before they discussed obtaining body camera footage. The body cam, I believe, was obtained sometime in January. And so there were still several months between the end of the detectives efforts or any federal government knowledge of those efforts and the hearing itself. So you said several months between the federal knowledge of it and the hearing. My question was, how many months between the state's failed efforts to find her and the federal hearing? It was at least several months. Yes. All right. And that's another reason. So in Comito, it was at least the federal probation officer who had tried and failed to subpoena the witness. That was not enough in Comito. Here we have this added layer of attenuation where the federal government is relying on this state detective and there's this extra amount of time that the federal government could have been looking for or just in some way contacting. And what's the level of detail that the federal prosecutor learned about the state efforts to secure the witness? The prosecutor said that he couldn't remember on page 16 when the judge asked what efforts were made, what did they report to you? The quote is, I don't remember. I know they were also looking for her for the DA's office as well. I don't remember how many times they looked for her. But then we also have that the defense team spoke with Ms. Gallego and then attempted to procure her presence at trial and attempted to service Pena and they weren't able to do so. So there was, state had attempted to do so, the defender's office had attempted to do so. But your point is the government itself didn't do anything. Yes. And the defense efforts also don't excuse the government in this case. In Comito as well, the defense attorney had spoken with the witness mere minutes before court, confirmed that the witness did not want to testify. That's also what we have here. And just because the witness is unwilling to voluntarily come to court doesn't mean that the government can assume that its efforts to subpoena would be fruitless. So this due process concern is flexible, balancing. And here there were, the district court concluded there were an issue of reliability because the interview had been recorded on the body cam and because Ms. Gallego appeared sad, agitated during the interview. So these are excited utterances. And also because the defense team was able to contact Ms. Gallego and interview her and was successful from that interview and reducing the charges and having some of the charges dismissed. So why isn't that enough in the balancing? So there are a couple of points there that I want to address in turn, starting with kind of the substitutes for confrontation so that the presence of the body cam video, the defense's ability to interview Ms. Gallego's, the ability to interview prior was also present in Comito. And receiving federal court benefits from it, you know, dismissing certain claims and real consequences flowed from that earlier conversation. Yes. The court clearly gave it credence. Yes, I think that's true. And still, it wasn't a full substitute for confrontation. In California versus Green, Supreme Court talks about how it's not just observing demeanor that's important, but it's also putting the witness under oath that guarantees the truthfulness and being able to compel the witness to answer questions. In that interview with the defense team, we weren't able to answer or ask all of the questions we wanted to or press for an answer. She refused to give certain answers. And because we didn't want her to hang up, lose this opportunity to investigate, we had to back off of certain avenues of questioning. And that's not a problem in an actual hearing, in real confrontation. The other question is this, the issue of being emotional. I'll address that just to clarify. This was not an excited utterance, as the government argues. In Cepeda, this court stated that an excited utterance must have been a spontaneous reaction, not the result of reflective thought. And these statements were not spontaneous. They were all answers to law enforcement questioning during the investigative and reporting process. I think it sounded fairly spontaneous. She was very emotional. The responses sounded like she was reliving the moment. It was still in response to that law enforcement questioning. It wasn't the 911 call, for example, which was not produced by the government during the hearing. It was after the fact, giving these answers. And if this evidence were admissible in court, that would be something for the court to consider in terms of credibility. But it doesn't single-handedly create a justification for admitting this evidence. I see my time is running low, so unless the court has other questions, I'll reserve for rebuttal. Thank you. All right. I'm not sure if I'm going to try to say it. Rahe? Oh, okay. I got it. Good morning. May it please the court, Mark Rahe for the United States. Your Honor, Comito itself says that the right to confrontation is not static. It depends on the circumstances. And going right into good cause, the court is also very clear that good cause varies, of course, depending on the specific circumstances. Here, we don't deny that the government below could have made a better record about the efforts it made, but the evidence that was in the record still shows that there is indeed something to put on our side of the balance. In fact, to start with that, it's not just even about the subpoena efforts. Excerpt of record 144, that is the revocation petition. It's presented under a penalty of perjury. The probation officer indicated that this was a Christmas Eve attack on January 5th, 2023. Within two weeks, the detective already was unable to get a response or to contact the victim. And at the very end of that body cam video, Officer Alvarez tells the victim, this guy goes, a detective will be in contact with you. So here we have right off the bat, and unfortunately, as this court's case law has recognized, I would point to footnote six of the hall opinion. It's well recognized that victims of domestic violence incidents are often reluctant to cooperate, even after they have initially made a 911 call like they did here. So that evidence is undisputed that the detective was unable to make contact. And then, you know, I know it. Defense counsel pointed out when the prosecutor was questioning, he said, when I took up this case. And that was in January 30th of 2023 was when the defendant said, I'm going to contest this. The revocation hearing was just six weeks later on March 27th. In early February is when the prosecutor makes contact with detective. He said at the time I first contacted her. She was still trying to make efforts to subpoena on behalf of the state. So, the way the government sees this record is that at that point, the prosecutor believed it was futile. And, you know, it's not like federal agents are assigned to revocation hearings usually our chief witnesses when the state declines to prosecute or the local law enforcement officers. But here, having had that record of the defendant was unwilling or not the defendant, the victim was unwilling to cooperate from the get go and having heard and he said it was at least more than 1 effort to subpoena. He didn't make the further effort now. In addition to that, we have this, you know, these facts here, the defense just 6 days before the hearing made an attempt to subpoena unsuccessful. And, you know, I think what's even more interesting is what came out of that conversation. Basically, by that point was visiting the defendant again regularly having regular phone calls when the defense investigator called her to talk. She said, I can't talk to you until I verify with the defendant that you're working for him. So, these are all circumstances that we believe also go to good cause because under Camino, and, you know, Camino was decided in 1999 there has not been a lot of published case law since then. But if Camino says it's a totality of the circumstances approach. There's a whole lot of circumstances here that still support the district courts finding and in Camino itself. I think the government said that, you know, that the proffer was that the victim was afraid of the defendant. And she, she was there in the courtroom that day. I mean, those kinds of things are not present here. And as we pointed out, we know that the defense wants to make this case look like a carbon copy of Camino Camino. It was not a violent altercation, it was, you know, using checks or ATM card. The victim didn't call 911 she called the probation officer. Are you suggesting that Miss Gallego was afraid of Mr Akbar and that's why she didn't want to testify because I didn't see anything in the record to establish that. What we're saying is it's not always from fear as you know that the scholarly literature points out she just wouldn't cooperate was our position and sometimes that comes from rekindled affection, but it doesn't seem as if this good cause requirement puts that much of a burden on the government. Here, the government could have at least tried to subpoena her then they would have had done something rather than rely on this state's efforts that aren't described in the record we don't really know what the state did so it's hard to say if that establishes futility. Well, you know, I think that, you know, are the district court judge burns pointed that out and basically, you know, told the prosecutor I think in the future, you know, you ought to have done that. And the prosecutor say something like I'm a less is more sort of prosecutor. So, you know, we didn't really do much here. He said he was less is more but I think at that point I don't know that he wasn't saying like I'm lazy and I don't want to do anything. He also said that he's had a lot of history before, you know, dealing with domestic violence cases and instead of getting, you know, caught up in a morass of trying to force somebody who doesn't want to testify. He said I immediately went to work to get the body cam footage and to find the other circumstantial evidence. The difficulty with domestic violence victims as witnesses is addressed and communal in our case law and that the government can present the hearsay as long as they show some good cause for why they're doing it. It's not an all or nothing sort of approach that it's a domestic violence case and she doesn't want to testify. So that's good enough that hearsay comes in. So I think what I'm struggling with in your position is that it doesn't seem like the government did much at all. Well, and again, I would say, you know, you have it, you already have again, excerpt of record 144. It's undisputed by the defense that the detective was unable to reach him within two weeks of the incident. But we don't know how many times the detective called or tried to reach or if the detective went to her house, how many subpoenas they attempted to serve. We don't know any of that detail. That's true. But we know that the conclusion was that they didn't get contact. We also know that the district attorney chose not to present charges. So I think it's a fair state detective is also a less is more kind of person. And then we're left with multiple levels people not doing a whole lot and just sort of looking at this situation and making a judgment call about domestic violence situations generally. Again, this is a revocation hearing. This isn't a brand new trial. It's a balancing process. It's not as if nothing was done here. We, you know, and even then you still have to balance it against the reliability. I mean, here, there's no question. You know, she invoked 911. They came, they responded. We have her statements. The detectives made an effort. I mean, yeah, it would make the record better. If you know, and I even told the process in the future, you know, put that person on the stand to say, I went this day, that day, and this day, but there was never any dispute. It's not even that the defense was disputing that these efforts were made. It's not as if nothing happened. But evidence is there of actual efforts to contact her and service subpoena by the federal government. Yeah, the prosecutor brought evidence that the federal government tried to serve a subpoena on her. Well, no, the federal said that once it came to me, I'm talking about the federal, you said, it's not like the feds didn't do anything. I'm asking, did they do anything about trying to serve the subpoena? Seems to me the efforts they did were to try to get around serving the subpoena missing. We've got an alternative. So my question is to challenge your statement, correct, that it's not as if the federal government did nothing. You know what I think because I've been there so long and again, with these revocation hearings, when I say the feds, you know, at that point, the detective becomes our witness. If the detective had been able to subpoena the witness and bring her in, I could stand up here and say, on behalf of the federal government, the detective did that. So, once we take over revocation hearing, it's not like we get assigned new agents, but you're right. There was no new federal officer. We're not denying that, that at that point went forward because the prosecutor was told at that point, you know, that the detective couldn't make phone contact, had been trying to get a subpoena. The state couldn't. Right. Right. Okay. I think I understand the facts. Don't spend any more time on my question. Oh, no, but it's again with, you know, this was the evidence that was put forward and then on the other side of the balance commuter says it's not a static right. You have an issue of reliability here we have, you know, under the victim. The video itself confirms that it is as if it is an excited utterance. And again, the rules of evidence do not even apply to revocation hearings. But is this court held in hall to the extent you have evidence that does, in fact, satisfy federal rules of evidence that actually is an issue of reliability. And here, you know, the victim, I mean, she was consistent even there was evidence that in her jail calls later, she continued to make this allegation. And, you know, it was never as if she recanted that. And so I think on this record that the reason that the result that the court reach was reasonable to because as your honor pointed out, the court still credited a lot of what the defense turned up. The theft allegation was dismissed and the battery was reduced to a misdemeanor. So, in the end, I mean, with all the evidence that came in, that seems like a reasonable result. And I see I'm nearing the end of my time unless there are any further questions the government wants to move. Thank you. Mr. Eaton. Thank you. I have two quick points to make. I first want to address the, the council for the government mentioned there's no dispute that efforts were made. And, and that's true to the extent that there's nothing concrete for us to dispute. We don't know what efforts, the detective made so it could be true that the detective made a couple of phone calls may or may not have left any voicemails. Maybe there was more, maybe there wasn't up to the extent that the government feels that the detective essentially became their agent or their witness by being in contact with the USA. What they could have done in this case, and at a minimum should have done was bring that detective as a witness, have the detective testify as to what efforts were made at that point. There is an actual record before the district court and before this court to evaluate but that's missing, or they could have at least made a proffer of what the detective would say about those efforts. I think it's unclear if a proffer would be sufficient but they could have made a could have done that but they didn't. This proffer definitely was not sufficient. The other only thing I'll note is that all was a domestic violence case due process or a good cause still came up in that hearing and, and with that I'll submit. Thank you. Thank you. So, Council, thank you both for your arguments and this case is submitted. The next case for argument is my Hendricks versus the city of San Diego.
judges: Ebel, BADE, FORREST